IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

Steven Samuel, #318276,          )   Civil Action No.:2:14-666-TMC-WWD
                                      )
                  Petitioner, )
                                      )   **REPORT AND RECOMMENDATION**
v.                        )      **OF MAGISTRATE JUDGE**
                                      )
Willie L. Eagleton, *Warden*,     )
                                      )
                 Respondent. )
                                      )

The Petitioner, Steven Samuel, number 318276, is presently incarcerated at the Evans Correctional Institution, a facility of the South Carolina Department of Corrections. The Petitioner, appearing pro se, filed his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on March 4, 2014. (Dkt. No. 1.) Samuel filed a pleading which the Clerk denominated a "Supplement" on March 5, 2014, in which he raised no new grounds for relief, but sent copies of orders from the state courts and advised when his filing fee would be paid. (Dkt. No. 3.) On June 5, the case was reassigned to the undersigned Magistrate Judge. (Dkt. No. 15.)

On June 17, 2014, the Petitioner filed a "Petitioner's Memorandum in Support of Habeas Corpus." (Dkt. No. 18.) Following two extensions of time to file dispositive motions, the Respondent filed a Motion for Summary Judgment with exhibits[1] on August 12, 2014.

_____

[1] The following documents have been made part of the record here:
1. Appendix, the Honorable William P. Keesley, Circuit Court Judge;
2. Office of Appellate Defense's letter and Affidavit dated May 9, 2007;
3. South Carolina Court of Appeals' Order of Dismissal and Remittitur dated May 11, 2007;
4. Memo in support of Application for Post-Conviction relief (2008-CP-32-1586) dated April 11, 2008;
5. Notice of appeal;
6. Johnson Petition for Writ of Certiorari dated November 3, 2011;
7. Pro se Response to Johnson Petition;
8. South Carolina Court of Appeals' Order denying certiorari dated February 11, 2014;
9. Remittitur dated March 4, 2014;
10. Transcript of Record page 48; and
11. SCDC records/Clerk of Court records.

(Dkt. No. 23; Dkt. No. 24.)  An order was filed August 13, 2014, pursuant to <u>Roseboro v.</u> <u>Garrison</u>, 528 F.2d 309 (4th Cir. 1975), advising the Petitioner of the summary judgment procedure and the possible consequences if he failed to respond adequately. (Dkt. No. 25.)

The Petitioner filed a Motion for a Preliminary Injunction on September 5, 2014, and two Motions for Extensions of Time to file an opposition to the dispositive motion.  The court granted the motions for more time and gave the Petitioner until November 20, 2104, to file his opposition. The Petitioner filed his opposition with supporting documents on or about November 24, 2014. (Dkt. No. 41.) Pursuant to the provisions of 28 U.S.C. § 636(b) and Local Rule 73.02(B)(2) D.S.C., the undersigned is authorized to review such petitions and submit findings and recommendations to the District Judge. Hence, it appears consideration of the motions is appropriate.

## **PROCEDURAL HISTORY**

The Petitioner is presently incarcerated as the result of his Lexington County conviction and sentence for armed robbery. The Lexington County Grand Jury indicted Samuel in April 2006 for armed robbery. (R. at 146-47.) Sally J. Henry, Esquire, represented him on this charge.

On October 18, 2006, Samuel pled guilty to armed robbery, before the Honorable R. Knox McMahon, who sentenced him to twelve years imprisonment. (R. at 13-64.) An indictment for criminal conspiracy was nolle prossed. (R. at 14.)

Samuel timely served and filed a notice of appeal.  Assistant Appellate Defender Eleanor Duffy Clary represented him on appeal. On May 9, 2007, Clary wrote the Court and filed an attached affidavit from Samuel, in which he indicated his desire to knowingly, intelligently and voluntarily abandon his direct appeal. On May 11, 2007, the South Carolina Court of Appeals filed an Order dismissing Samuel's appeal as he requested. The Court of Appeals' Order also served as the Remittitur to the Lexington County Clerk of Court.

2

Samuel then filed a pro se Post-Conviction Relief (PCR) Application (2008-CP-32-1586) on April 11, 2008. He alleged the following grounds for relief in his Application:

1. Ineffective Assistance of Counsel.

   a. "no contact with attorney until date scheduled for trial;"

   b. failure to investigate;

   c. "failure to object that attorney was not competent enough to render effective assistance;"

   d. "failure to present medical records and prescription effects;"

   e. "failure to file motion for a Blair Hearing;" and

   f. "failure to present legal material for defense"

2. Involuntary Guilty Plea.

   a. "mentally impaired due to multiple medications; which blurred my thinking ability"

3. Prosecutorial Misconduct.

   a. Selective prosecution - allowed third party to offer evidence that alleged Applicant [was] guilty of armed robbery.

(R. at 66-73.)

The State filed its Return on or about November 6, 2008. (R. at 77-81.) On May 4, 2011, Samuel filed his "Amendments to Post Conviction Relief Application," with the assistance of collateral counsel, Jason Scott Chehoski. His "Amendments" included the following allegations:

1. The Applicant was denied effective assistance of counsel in violation of the Sixth Amendment to the United States Constitution and Article I, Section 14 of [t]he South Carolina Constitution.
   A. Defense attorney failed to effectively discharge her professional responsibilities while she was handling Applicant's case.
   B. Defense attorney failed to act as Applicant's diligent, conscientious advocate.
   C. Defense attorney failed to acquaint herself with the necessary facts of the case needed to provide proper representation.
   D. Defense attorney did not do the necessary factual investigation in Applicant's case.

3

E. Defense Attorney did not understand the nature of the medication Applicant was talking at the time of the plea, rendering the plea involuntary.
F. The attorney that represented Applicant on this charge in Court failed to function as the counsel guaranteed by the Sixth Amendment to the Constitution.

(R. at 74-76.)

The Honorable William P. Keesley held an evidentiary hearing into the matter on May 16, 2011, at the Lexington County Courthouse at which time Samuel was present and testified, represented by Chehoski. The State presented the testimony of Samuel's plea counsel, Ms. Henry. (R. at 82-134.)

Judge Keesley denied relief and dismissed the Application with prejudice in an Order of Dismissal filed on July 12, 2013. The Order of Dismissal addressed Samuel's claims that (1) plea counsel was ineffective because she failed to have any contact with Samuel until the date scheduled for trial; (2) plea counsel was ineffective because she failed to adequately investigate the case; (3) plea counsel was ineffective because she failed to object; (4) plea counsel was ineffective because she was not competent enough to render effective assistance; (5) plea counsel was ineffective because she failed to present medical records and prescription effects; (6) plea counsel was ineffective because she failed to file motion for a Blair hearing; and (7) plea counsel was ineffective because she failed to present legal material for Samuel's defense. The Order of Dismissal likewise addressed Samuel's allegation that there was a plea agreement for a 10-year sentence and that there were other people who were aware of this agreement. Finally, the Order addressed Samuel's claim that his guilty plea was involuntary because he was taking pain medication that mentally impaired him and blurred his thinking ability. (R. at 136-45.)

Samuel timely served and filed a notice of appeal. Assistant Appellate Defender Robert M. Pachak represented him in collateral appellate proceedings. On November 3, 2011, Pachak filed a <u>Johnson</u> Petition for Writ of Certiorari[2] on Samuel's behalf and

---

[2] See <u>Johnson v. State</u>, 294 S.C. 310, 364 S.E.2d 201 (1988). <u>Johnson</u> sets forth the procedures for counsel to follow when filing meritless appeals in state PCR cases pursuant to <u>Anders</u>, supra. This unique state court procedure provided more protection to Samuel than the Constitution requires. <u>See Pennsylvania v. Finley</u>,

petitioned to be relieved as counsel. The only Question Presented in the <u>Johnson</u> Petition was: Whether defense counsel was ineffective in giving petitioner incorrect sentencing advice? (Dkt. No. 23-7 at 3 of 8.)

Samuel subsequently filed a <u>pro se</u> Brief response, in which he asserted a variety of claims, which, read liberally, appear to be as follows.

First, "(1) unlawful, (2) unduly harsh and (3) [overly] excessive sentence."

Second, his plea was involuntary because he was under the influence of medication at the time he entered it, and there was no evidence to support the sentence and that the sentence was supported by "false statements."

Third, he contended that he was innocent of the armed robbery because the victim's report indicated that the robbery occurred around 6:00-6:30 a.m. However the nightclub photographs would have revealed that Samuel was at a different location during the time of the robbery.

Fourth, plea counsel was ineffective because:
(A) Counsel (Ms. Henry) willingly failed to release herself as in counsel[,] when she on (tran.) p. 7 (l) 7-11 openly testified to the court …. That she "was not effective" – and in her own words[,] …"if she was compelled to proceed she would not be able to represent I/M plaintiff [d]uring the court of General Session[s]. Also on (tran.) p.9 (l) 7-16 (same synopsis " – stated)
(B) [Counsel never presented the plea court with documents showing the medications that I was on at the time of the plea and which rendered the plea involuntary].
(C) [Counsel failed to stop the guilty plea when I told the plea court that I was under the influence of "medical drugs"].
(D) [Counsel committed perjury at the plea when she said that she was "effective" and both willing and ready to represent me when she had said two days earlier that she would be ineffective if the court did not continue the case because she was not prepared].

Fifth, the plea court abused its discretion by failing to grant counsel's motion to continue the case to the next term of court, by allowing Samuel's plea to proceed when counsel was ineffective, and by allowing the plea to go forward when the court was aware that he was under the influence of medication.

The South Carolina Court of Appeals filed an Order denying certiorari and granting counsel's petition to be relieved on February 11, 2014. (Dkt. No. 23-9.) The Remittitur was sent to the Lexington County Clerk of Court on March 4, 2013. (Dkt. No. 23-10.)

---

481 U.S. 551 (1987) (prisoner, who had no equal protection or due process right to appointed counsel in post-conviction proceedings, also had no right to insist on <u>Anders</u> procedures for withdrawal of appointed counsel when collateral counsel determined direct appeal was frivolous).

**HABEAS GROUNDS PRESENTED BY SAMUEL**

Samuel raised the following allegations in the instant Petition for Writ of Habeas

Corpus verbatim:

GROUND ONE: Ineffective assistance of counsel for

SUPPORTING FACTS:
    a) no contact with attorney until date schedule for trial.
    b) Counsel failed to obtain video surveillance and pictures that would have
reflected my presence at a club at the time of the crime. The said pictures had
time stamps that would show the time of location that it would be physically impossible
to have committed the alleged crime.

Samuel also raised the following claims in his Memorandum in Support of Habeas Corpus

filed on June 17, 2014. (Dkt. No. 18.)

1) Petitioner [pled] guilty to armed robbery well after a potential trial and discovered
during the PCR hearing. There was video and pictures that would have shown that the
Petitioner was at a Club at the time of the alleged crime. The Victims reports indicated
that the robbery occurred around 6:00-6:30 am in question. However the club
photographs would have revealed that the Petitioner was at a different location during
the time of the purported robbery which would have clearly caused a reasonable
defendant on insisting on going to trial.

2) Secondly, Petitioner asserts that the Prosecutor had this evidence and violated Brady
and [f]urther as the pictures indicates the State by way of the Police marked out the Time
Date stamp and as a result of their withholding and manipulation of evidence has
severely prejudiced the Petitioner case.

3) The Petitioner would submit an actual innocence exception as mandated under
Herrera v. Collins 506 U.S. 390 and the Petitioner would submit this claim under the alibi
assertion. Specifically the Record clearly reflects that the State purposely withheld
evidence that had a time/date stamp that would have reflected that Petitioner was at a
different location during the time that the victims alleged they were robbed. Specifically
under Strickland v. Washington, 104 S. Ct. 2052 Counsel provided Representation that
fell well below the standard of Effective Assistance of Counsel.

4) Plea counsel was constitutionally ineffective for not investigating and receiving the
club tape from the night of the robbery in order to establish an alibi defense.

## APPLICABLE LAW

### Summary Judgment Standard

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment

"shall" be granted "if the movant shows that there is no genuine dispute as to any material

fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

"Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 576 (4th Cir. 2010) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  In ruling on a motion for summary judgment, "'the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor.'" Id. (quoting Hunt v. Cromartie, 526 U.S. 541, 552 (1999)); see also Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-24 (4th Cir. 1990).

**Habeas Standard of Review**

Since the Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. Lindh v. Murphy, 521 U.S. 320, 322-23 (1997); Breard v. Pruett, 134 F.3d 615, 618 (4th Cir.1998).  Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication:

> 1. resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> 2. resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the State court proceeding.

28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 398 (2000).  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." Williams, 529 U.S. at 410. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 131 S.Ct. 770, 786 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).

**DISCUSSION**

A review of the record and relevant case law reveals that the Respondent's Motion for Summary Judgment should be granted and this matter ended.[3]

**A.    Ground One(a)**

In Ground One (a) of the §2254 Petition, the Petitioner seeks habeas relief, asserting his attorney was ineffective for having no contact with him until the scheduled trial date. The United States Supreme Court has said that a meritorious ineffective assistance of counsel claim must show two things: first, that counsel's performance was deficient and, second, that counsel's deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687-96 (1984). A court's evaluation of counsel's performance under this standard must be "highly deferential," so as to not "second-guess" the performance. Id. at 689. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. (internal quotation marks and citation omitted); see also Bowie v. Branker, 512 F.3d 112, 119 n.8 (4th Cir. 2008); Fields v. Att'y Gen. of Md., 956 F.2d 1290, 1297-99 (4th Cir. 1992); Roach v. Martin, 757 F.2d 1463, 1467 (4th Cir. 1985). In order to establish the second prong of Strickland, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. A "reasonable probability" has been defined as "a probability sufficient to undermine confidence in the outcome." Id. While Strickland itself is a deferential standard, when both § 2254(d) and

---

[3]The undersigned also recommends that Petitioner's Motion for a Preliminary Injunction (Dkt. No. 29) be denied as moot. In that motion, Petitioner appears to complain about some difficulties receiving various documents received from the South Carolina Attorney General's Office. (See generally Dkt. No. 29-2.) Petitioner requested an injunction "to secure [his] legal mail back . . . so that he may fulfill his obligation" to respond to the Motion for Summary Judgment. (Dkt. No. 29-2 at 3 of 3.) Given that Petitioner filed his Response in Opposition to the Motion for Summary Judgment on or about November 24, 2014, Petitioner's Motion for a Preliminary Injunction (Dkt. No. 29) should be denied as moot.

Strickland apply, "review is doubly" deferential. Harrington v. Richter, 131 S.Ct. 770, 788 (2011). Indeed, when § 2254(d) applies, "[t]he question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Harrington, 131 S.Ct. at 788.

The two-part test enunciated in Strickland applies to challenges to guilty pleas based on ineffective assistance of counsel. See Hilll v. Lockhart, 474 U.S. 52, 58 (1985). "[I]n order to satisfy the 'prejudice' requirement [set forth in Strickland], the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59.

The claim set forth in Ground One(a) was presented to the state PCR court, which rejected it along with other claims of ineffective assistance of counsel. The PCR court's order stated, *inter alia*,

> This Court finds that [Samuel] has failed to meet his burden of proof. [Samuel] has not established that his counsel performed deficiently or that he was prejudiced in any way by deficient performance of counsel. [Samuel] has alleged that his counsel was ineffective for the following reasons: no contact with attorney until date scheduled for trial; failure to investigate; failure to object that attorney was not competent enough to render effective assistance; failure to present medical records and prescription effects; failure to file motion for a Blair hearing; and failure to present legal material for defense. . . .
>
> This Court finds that any deficiencies, and this Court finds none, were caused by [Samuel's] own failure to meet with his counsel. Instead, [Samuel] kept going to other attorneys and advising his appointed counsel that he was going to retain a private attorney. This Court finds that [Samuel] has failed to show that his counsel performed deficiently and that [Samuel] was prejudiced by counsel's alleged deficient performance. Therefore, this Court finds that this allegation is denied and dismissed.

(R. at 141-43.)

In cannot be said that the state court's rejection of Samuel's claim was "contrary to" or involved an "unreasonable application of" clearly established United States Supreme Court precedent under § 2254(d)(1). The ground for relief should be rejected.

9

Here, the PCR court indicated that it had reviewed the transcript of the pretrial conference held on October 16, 2006, at which counsel Henry moved for a continuance of the trial and argued:

> Mr. Samuel was appointed to the Public Defender's Office back in January of this year, Your Honor. The exact date appears to be January 6 of '06. He was assigned to an attorney who is no longer with our office, Mr. Jack Duncan, who left in [mid-April].
>
> This case was not reassigned until August the 17th [(sic)] for various reasons. Normally it's policy at the office when an attorney leaves to basically move their case file to the next attorney in place.
>
> Because this was a case involving a major felony, the case was assigned to me rather than to the attorney who came in to replace Mr. Duncan. I got this case August 17th.
>
> The first contact that I had with Mr. Samuel was by my record on October 2nd, but I made several telephone calls to the numbers that were in my file. I don't have any record of his having contacted me or tried to contact me, although we sent him a letter of my representation July 18, 2006.
>
> I believe that conflicts with what I just said about getting the file on August. I had it on July, July 17th, not August. I have had no contact with him until I attempted to get in touch with him following notice from the Solicitor's Office that this was going to be on the trial docket.
>
> He met with me on October the 3rd. I gave him a copy of the discovery information that had been provided to us by the State which was complete at that time.
>
> Since then there has been more discovery made available to us, but at the time that I met with Mr. Samuel he indicated that he would secure the services of a private attorney. I think he made several attempts in that regard but was unsuccessful.
>
> Up until the last contact I had with him, October the 9th, I made a phone call to his residence. I believe I spoke at that point with his stepmother, who indicated to me that he had been in an accident at work. He was in the hospital. She was at that point going over to the hospital. I think he was in there for two days. As you can see, he is on crutches here. He had some strained ligaments in his leg and a concussion.
>
> Bottom line is I did not meet with him or talk with him again until the 13th of October, which was this past Friday. He said he was still in the process of trying to hire an attorney.
>
> He did not come into my office to meet with me. At that point I had been provided further information by the State, some really critical, important information that I needed to discuss with him.
>
> But he has made no effort in cooperating with me to that end, rather he has spent his time trying to secure the services of a private attorney. Late Friday afternoon we received a telephone call from Kenneth Gaines.

I provided a copy of a fax that we received Monday morning, this morning, indicating that he had been retained to represent Mr. Samuel. I believe I have given a copy of that to the Court as well.

Mr. Gaines could not be here today to request a continuance of this case so that he could meet with Mr. Stevens -- Mr. Samuel, I'm sorry -- and I am doing that on his behalf.

I believe at this point that it would be prejudicial to Mr. Samuel for me to proceed, not having had a chance to fully review with him all the discovery matters, to meet with him to prepare whatever type defense might be available for him.

Since this case is -- well, now it's ten months old. There are numerous cases on the solicitor's docket much older than this. I believe that it would not harm the State in any fashion to continue this case either until the next term of court, which I believe is next week, so that Mr. Samuel would have the attorney of his choice.

Additionally, I understand the situation of the witnesses here. My understanding also is that the State has one other witness who purports to be an eyewitness to the events, as well as I believe an incriminating statement from Mr. Samuel's codefendant. I don't believe it would harm their case if, in fact, they were not able to produce the second witness to this event.

So based on all that information, Your Honor, we would respectfully request a continuance in this matter until Mr. Samuel can be represented by the attorney of his choice, who is Kenneth Gaines.

(R. at 4-5.)

The Assistant Solicitor opposed a continuance. He argued that one witness had returned to the State from Louisiana. He also noted that Samuel's co-defendant was incarcerated in the county jail. "That is one of the reasons we have tried to move quickly on this." Furthermore and regardless of whether Samuel had cooperated with counsel, the Assistant Solicitor stated that based upon his experience in working with plea counsel in the past, he felt certain that she had been working on the case. (R. at 8.)

The Assistant Solicitor had also spoken to Mr. Gaines. "He had indicated to me that he had spoken at length with Mr. Samuel about the fact this was on the trial roster and that if [Samuel] could not get a continuance, he would not represent or be able or willing to represent Mr. Samuel. I spoke with Mr. Gaines this morning, and he reiterated that that was his position." (R. at 8-9.) In response, counsel Henry stated that she believed that she would not be able to effectively represent Samuel if the judge ruled that the case had to go

to trial at that time because she not been able to meet with Samuel and review the discovery responses with him. (R. at 9.)

After hearing from Samuel, the trial court refused to continue the case until the next term of court because Samuel had been out on bond since February and he could have retained a private attorney. Instead, he requested a continuance on the eve of trial, after the State had brought in a witness from Louisiana. Nonetheless, the trial court continued the case until October 18th, to allow counsel Henry and Samuel to meet, review discovery, and discuss the case. (R. at 9.)

At the PCR hearing, the Petitioner testified in relevant part that his attorney was "between Ms. Henry and … Professor Gaines." He testified that he had retained Mr. Gaines, but Mr. Gaines was relieved from the case. (R. at 86-87.)

Samuel had made bond in February 2006, but he testified that the only face-to-face meeting with counsel that he recalled occurred on the day the case was called for trial, October 16, 2006.  He also claimed that he did not have plea counsel's phone number and he was unaware that a specific attorney represented him after Mr. Duncan was relieved. While the trial court had granted a continuance from October 16th until October 18th, so that Samuel could meet with his attorney, Samuel did not meet with counsel Henry again until they were at the courthouse on the 18th. Samuel stated that he understood that the two day continuance was granted so that he and counsel could review this discovery response. However, he admitted that he had not gone to her office because he had a doctor's appointment on the 17th. He stated that his meeting on October 18th only lasted for a few minutes. (R. at 97-99.)

Counsel Henry testified at the PCR hearing that she had been practicing law for eighteen years, and that roughly 99% of her career has involved practicing criminal law. (R. at 110-11.) Consistent with her representations at the hearing on the continuance motion,

Henry testified that Samuel's case was reassigned to her after Mr. Duncan left the Public

Defender's Office "sometime around April (of 2006)." As the result of "the volume of cases

that Mr. Duncan had and the time we had available to sit down and review the cases and

reassign them," she did not get the case until two or three months later. (R. at 111.) Henry's

notes reflected that she first met with Samuel on October 3, 2006.[4] That meeting was after

she had been unable to reach him through the bonding company he had used or at the

telephone numbers that he had given to her because he did not live at the residences

associated with those numbers, and Henry had asked his father to have him call her.

Henry had earlier sent him a letter advising the Petitioner that she represented him on July

18, 2006, which letter included her telephone number, as well as other contact information,

and which was not returned as undeliverable. (R. at 5, 112-13.) Henry also testified that:

> [T]he last appearance date that I have a copy of, indicated that he had been to
> appearances -- the Solicitor had told him to come back -- was on September 26th. And
> that appearance date and the follow-up date indicated that he should be back in court
> on October 26th. [(Sic)]
>
> Okay, in the interim, I received a letter from the Solicitor on the case, Robert Madsen,
> … sometime immediately after the appearances in September[,] … noticing me that he
> was going to try the case the week of October the 16th. Now, … having met with Mr.
> Steven that one time … there was a lot of work and communication that needed to be
> done in the interim.
>
> And that's why I tracked him down and told him that he needed to come in immediately
> and sit down and talk with me about this case. So that was the chronology of the events.
> That was the first meeting I had with him.
> He never contacted me, even though I sent him the letter indicating I was his
> representative, never called, wrote, asked for an appointment.

(R. at 113-14.)

Additionally, Henry testified that on October 3, Samuel had the State's discovery

responses. Henry and Samuel "discussed the discovery" and counsel told him that she had

---

[4] Samuel made at least two appearances before that date and Henry "would have seen him at that
time, but not to discuss his case at any length. We count on [our clients] calling to make an office appointment
to come in and discuss the case with us." (R. at 112.)

13

learned "a little bit more about the State's position, learning that the two victims were available and ready to testify." They were aware that one victim still lived in South Carolina. Although the other victim had moved to Louisiana, that victim "was willing to come back and testify." Counsel likewise reviewed with him his right to a jury trial; the applicable law; the charges against him; the elements of the offenses and the penalties that he faced. (R. at 114-15.)

Henry testified that they also discussed the facts of the case and he provided her with "some background information" at this interview. At the end of that interview, Samuel told Henry that he was going to hire Theo Williams to represent him. Henry responded that, if that was his intention, "to do so and let me know, because time was of the essence, and it wasn't anything we could mess around with." Henry testified that she "never heard back from him regarding that, and I did speak to Theo Williams, just ran into him in court before the date of the trial. And [Mr. Williams] said that Mr. Samuel had not hired him." (R. at 115.)

Counsel next spoke to Samuel on October 9, 2006, when she followed up on whether he had retained private counsel. "His stepmother answered the phone" and told counsel that he had fallen … or had had an accident at work," and that he was in the emergency room of the Lexington County Hospital. On this same date, counsel received the "new discovery" from the Solicitor's Office, to which Samuel had testified. (R. at 115-16.)

> The new discovery responses contained a couple of statements, and they said the video was ready for viewing. They had not had it up until that point, even though the pictures that were included in the discovery had been separated out, and an audio tape also.
>
> That was my next attempt to contact him. I did not hear back from her, so I called again on the 11th and asked to speak with him. His stepmother said that he was out getting his medications. And I asked her to please have him call me.
>
> I did talk to him two days later, 10/13. And he at that point, on the 13th, [he] said he was taking money to Theo Williams today. He was hiring him. Well, you know, here this is Friday, the 13th.

Monday, the 16th, we're up for trial. So it just got to be very confused. And rather than spending the time on working with him to prepare for trial, I'm trying to catch up with him, because he's out skittering around, trying to hire other attorneys. So I was kind of in an awkward position there.

(R. at 116-17.)

Since Samuel had told Henry that Mr. Williams wanted her to ask for a continuance so that Mr. Williams could represent him at trial, Henry called Mr. Williams. He told her that he did not represent Samuel. (R. at 118.) Henry testified:

So at that point, I told him, … "October 16th, this thing is going to trial." And I had done some preparation, of course, along based on the discovery information we had, preparing questions and reviewing to see what type motions needed to made and that sort of thing. Interestingly enough, I had a conversation with -- I always call him Professor Gaines, because that's how I knew him -- Mr. Gaines, who was going to represent him. And Mr. Samuel apparently had gotten
-- I don't know if he had given him money at that time -- but had gotten him to commit to representing him, if he could get a continuance.

In fact, Mr. Gaines faxed a letter over to us at the Public Defender's Office on the morning of the 16th, saying just the same thing. So under those circumstances, I went forward, and I think it's reflected in the transcript, with a motion for a continuance, saying he really wanted to hire Mr. Gaines.  And if he could get a continuance, Mr. Gaines would agree to represent him. But he had been to Mr. Gaines in July -- back in July -- with a copy of the discovery, trying the same thing, but apparently did not have the money at that time.

(R. at 118-19.)

In light of these developments, counsel moved for a continuance until the next term, which would have delayed the start of the trial until the following week. However, the trial court only granted a two day continuance. Samuel called her mid-day on the 17th and told her that he was still trying to retain Mr. Gaines. Counsel told him that he needed to be in court at 9:00 a.m. on the 18th to select a jury. (R. at 119-20.) When asked if she was prepared to go to trial, Henry testified that:

[Y]es, I had prepared as long as -- let me just put it this way. I had prepared as much as possible based on my limited contact with Mr. Samuel. But when it gets to the point where you have to track down a client to speak with them about a very significant event in their life, that just -- that indicates to me that either he wasn't –he really didn't want me as his attorney, or, you know, he just was not facing reality at that time. …. I felt like I made every effort … every effort to contact him to get him to come in and sit down and talk things out with me.

15

(R. at 120.)

This testimony demonstrates that the PCR judge's factual findings are supported by the record and, thus, are not objectively unreasonable under § 2254(d)(2). This includes the PCR judge's credibility findings that, unlike the Petitioner, Henry was credible. Nor has the Petitioner rebutted the presumption that these findings are correct by clear and convincing evidence. § 2254(e)(1). See also Cagle v. Branker, 520 F.3d 320, 324 (4th Cir. 2008) ("'federal habeas courts [have] no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them'") (citing Marshall v. Lonberger, 459 U.S. 422, 434 (1983)); Buckner v. Polk, 453 F.3d 195, 204 n.8 (4th Cir. 2006) (the task of a reviewing court in habeas corpus "is not to decide the credibility issue de novo but to determine whether [the Petitioner] has produced clear and convincing evidence that the [PCR] court's resolution of that issue was incorrect"). The credible evidence is that any supposed deficiency in counsel's representation of Samuel, including the number of meetings they had, was directly attributable to the Petitioner, himself. He refused to cooperate with counsel in preparing a defense, despite her repeated efforts to (1) find him and (2) secure his cooperation. Instead, in their few meetings, the Petitioner repeatedly told her that he would retain counsel. Even when he was told, in no uncertain terms, on October 16, that his trial would begin on the 18th, he did not go to meet with her. "If counsel was ineffective in any sense, it was only because the client rendered him so…. That is not the sort of 'ineffectiveness' for which relief can be granted." United States v. Pellerito, 878 F.2d 1535, 1543 (1st Cir. 1989). The Petitioner's Ground One(a) allegation that Henry did not meet with him until the day his case was called for trial was not improperly rejected by the PCR judge, and, as such, does not entitle him to relief here.

**B.**    **Ground One(b) and Claims Raised in the Memorandum in Support of Habeas Corpus**

Petitioner contends that trial counsel was ineffective in failing "to obtain video surveillance and pictures that would have reflected [Petitioner's] presence at the club at the time of the crime." Petitioner states, "The said pictures had time stamps that would show the time of location that it would be physically impossible to have committed the alleged crime." In his memorandum in support of habeas corpus, Petitioner continues as follows:

> Petitioner [pled] guilty to armed robbery well after a potential trial and discovered during the PCR hearing. There was video and pictures that would have shown that the Petitioner was at a Club at the time of the alleged crime. The Victims reports indicated that the robbery occurred around 6:00-6:30 am in question. However the club photographs would have revealed that the Petitioner was at a different location during the time of the purported robbery which would have clearly caused a reasonable defendant on insisting on going to trial.

(Dkt. No. 18.)

Respondent contends this claim is "procedurally defaulted . . . because Samuel failed to present the same allegation to the state supreme court after receiving an adverse ruling from the PCR judge." (Dkt. No. 23 at 33.) Respondent points to the PCR court's analysis of Petitioner's claim that counsel conducted a "constitutionally inadequate investigation." (Id.) In addressing the claim of inadequate investigation, the PCR court stated,

> This Court finds that any assertion that Applicant's counsel failed to properly investigate Applicant's case or prepare Applicant's case is unsupported. To establish counsel was inadequately prepared, an Applicant must present evidence of what counsel could have discovered or what other defenses could have been pursued had counsel been more fully prepared. Jackson v. State, 329 S.C. 345, 495 S.E.2d 768 (1998). The "brevity of time spent in consultation, without more, does not establish that counsel was ineffective." Easter v. Estelle, 609 F.2d 756, 759 (5th Cir. 1980). When claims of ineffective assistance of counsel are based on lack of preparation time, an Applicant challenging his conviction must show specific prejudice resulting from counsel's alleged lack of time to prepare. United States v. Cronic, 466

17

U.S. 648 (1984); U.S. v. LaRouche, 896 F.2d 815 (4th Cir. 1990). Here, the Applicant could not point to any specific matters counsel failed to discover which would have caused him to proceed with a jury trial instead of pleading guilty. The Applicant offered no evidence at the PCR hearing that counsel could have found that would have been more likely to have any outcome more favorable to the Applicant. The Applicant did not produce any witnesses or offer any other evidence from which this Court could conclude that the outcome of the case would likely had been different, had that evidence been developed. This Court finds that any deficiencies, and this Court finds none, were caused by the Applicant's own failure to meet with his counsel. . . . This Court finds that Applicant has failed to show that his counsel performed deficiently and that Applicant was prejudiced by counsel's alleged deficient performance.

(R. at 142-43.)

It is not clear to the undersigned that Petitioner raised the exact claim set forth in Ground One(b) in both the PCR court and the appellate court. Petitioner did claim in the PCR court that counsel was ineffective because she failed to investigate, and the PCR court addressed that claim, as set forth above. Although Respondent contends Petitioner did not raise the issue in his appeal from the denial of post-conviction relief, he did clearly assert in his pro se brief that the victims stated the incident occurred between 6:00 AM and 6:30 AM, and pictures show him leaving the club at sometime after 7:00 AM. (See Dkt. No. 23-8 at 6 of 49.)

To the extent Petitioner asserts his counsel was ineffective for failing to investigate, Petitioner has not shown the state court's rejection of that claim was contrary to, or an unreasonable application of, clearly established federal law, nor has Petitioner shown the state court's determination resulted in a decision that was based on an unreasonable determination of the facts. The PCR court rejected the claim because, *inter alia*, Petitioner "did not produce any witnesses or any other evidence from which this Court could conclude that the outcome of the case would have been different, had that evidence been developed." (R. at 143.) At the PCR hearing, plea counsel testified as follows:

Q. No, okay. With regards to the video, the surveillance video, did you review that–

A. Yes.

Q. –video?

A. Yes, I did.

Q. And was there anything that could be used as a defense?

A. It was a fairly clear video. But I told Mr. Samuel, you know, I would have–at trial, I would have raised an objection to its introduction, because what the State got was a montage of videos, because those cameras, there are three or four of them, and they were running all the time.

        And they tried to put the pieces together into one view or what would have been Mr. Samuel, Mr. Diamond, and the two girls as they went out. But it wasn't continuous.

        I don't think it would have been the best evidence. So I would have objected to that, but I don't know if that would have been successful at trial or not. It was clear that he was on the video with Mr. Diamond there.

(R. at 123-24.)

Petitioner is not entitled to federal habeas relief on his claim that counsel was ineffective in failing to investigate. As noted by the PCR court, Petitioner did not produce any evidence at the PCR hearing that counsel allegedly failed to discover. Accordingly, Petitioner cannot obtain federal habeas relief on the claim that counsel was ineffective in failing to investigate. See Beaver v. Thompson, 93 F.3d 1186, 1195 (4th Cir. 1996) ("[A]n allegation of inadequate investigation does not warrant habeas relief absent a proffer of what favorable evidence or testimony would have been produced."); see also Bassette v. Thompson, 915 F.2d 932, 940-41 (4th Cir. 1990) (concluding the petitioner's claim that other evidence should have been presented during the sentencing phase of his trial failed in "the absence of a proffer of testimony from a witness or witnesses he claims his attorney should have called," stating, "He claims that his counsel conducted an inadequate investigation to discover persons who would testify in his favor, but he does not advise us

of what an adequate investigation would have revealed or what these witnesses might have said, if they had been called to testify.").

Furthermore, any claim that counsel was ineffective in failing to investigate–at least in the instant federal case–appears based on the allegation that counsel failed to "obtain video surveillance and pictures." As set forth above, however, plea counsel testified that she did review the video. She testified she was unsure whether she had reviewed it with Petitioner, though he was aware of the "new discovery," because when she spoke to Petitioner on Friday, October 13, Petitioner told her that he was going to hire a different attorney, and they were up for trial on Monday, October 16. (R. at 116-17.) While Petitioner may not have reviewed the video,[5] the record does not support Petitioner's assertion that counsel failed to review the video. See Mason v. Allen, 605 F.3d 1114, 1121 (11th Cir. 2010) ("To the extent that Mason argues that the State failed to advise him of his *Miranda* rights, we find this claim refuted by the record. Accordingly, we cannot say that the state court's ruling on the legality of his confession is contrary to or an unreasonable application of clearly established federal law .").

The undersigned notes Petitioner's assertion that he discovered–at the PCR hearing–that "[t]here was video and pictures that would have shown Petitioner was at a Club at the time of the alleged crime." (Dkt. No. 18.) However, the record does not support Petitioner's assertion that he learned of the at-issue evidence ***at*** the PCR hearing. In fact, in his Memorandum in Support of Habeas Corpus, Petitioner points to the following testimony–his–at the PCR hearing:

---

[5]On the one hand, Petitioner complains that counsel was ineffective in failing to obtain the video, and on the other hand, Petitioner complains that counsel was ineffective because she did not review the video with him. As detailed above, however, Petitioner's dilemma was one of his own creation. The PCR court concluded as much, stating, "This Court finds that any deficiencies, and this Court finds none, were caused by the Applicant's own failure to meet with his counsel." (R. at 143.) Such a finding is supported by the record.

> Yes, sir, I would like to go back, due to the fact that I have confidential reliance on my whereabouts during the time of the servicemen, as I may state, said that they was robbed. During the time before that time, and then after the time, I have confidential reliance of my whereabouts, of me being under surveillance at the Southern Gentleman's Club.

(R. at 100; <u>see also</u> Dkt. No. 18-1 at 1 of 58.) Furthermore, the transcript of the plea hearing itself indicates the existence of a video that was "time dated on the corner." (R. at 43; <u>see also</u> Dkt. No. 18-1 at 1 of 58.) Petitioner is not entitled to federal habeas relief.

While the Respondent interprets the assertions set forth in Petitioner's Memorandum in Support of Habeas Corpus (Dkt. No. 18) to set forth additional grounds for federal habeas relief, it is not clear to the undersigned this was Petitioner's intention. Claim One and Claim Four of the Memorandum are addressed above under the Ground One(b) analysis. In Claim Two of the Memorandum, Petitioner asserts a <u>Brady</u> violation, stating,

> Petitioner asserts that the Prosecutor had this evidence and violated Brady and [f]urther as the pictures indicates the State by way of the Police marked out the Time Date stamp and as a result of their withholding and manipulation of evidence has severely prejudiced the Petitioner case.

(Dkt. No. 18.) Of course, any such claim is defaulted, as Petitioner did not raise a <u>Brady</u> claim to the PCR court. <u>See Montgomery v. Bodison</u>, C.A. No. 6:09-778-HMH-WMC, 2010 WL 297667, at *4 (D.S.C. Jan 20, 2010) (although petitioner raised some claims in his petition, they were procedurally barred because the PCR court did not rule on them, and petitioner did not file a Rule 59(e) motion); <u>Miller v. Padula</u>, C.A. No. 2:07-3149-PMD, 2008 WL 1826495, at *10 (D.S.C. Apr. 23, 2008) (concluding the petitioner's claim that counsel was ineffective for failing to challenge the lack of timely action on the arrest warrant was not properly exhausted because the claim was not raised during the PCR hearing, and "[a]n issue not ruled upon by the PCR judge is not preserved for review on appeal," and the petitioner's "attempt to raise the new issue in his post-trial motion was insufficient to preserve the issue for appeal").

21

Regardless, Petitioner is not entitled to federal habeas relief on his <u>Brady</u> claim. In <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment . . . ." <u>Brady</u>, 373 U.S. at 87. To show a <u>Brady</u> violation, the Petitioner must show: (1) the evidence was favorable to the accused; (2) the evidence was suppressed by the State, either willfully or inadvertently; and (3) prejudice ensued. <u>See Strickler v. Greene</u>, 527 U.S. 263, 281-82 (1999). In the instant case, <u>Brady</u> does not appear to be implicated, given that a <u>Brady</u> claim requires that the evidence be suppressed by the State. Here, the existence of a time and date stamped video was plainly acknowledged at Petitioner's guilty plea. (<u>See</u> R. at 43.)[6]

Finally, the last claim warranting a discussion is Petitioner's assertion of actual innocence. (Dkt. No. 18 at 5 of 6.) In <u>McQuiggin v. Perkins</u>, 133 S. Ct. 1924 (2013), the Supreme Court stated, "We have not resolved whether a prisoner may be entitled to habeas relief on a freestanding claim of actual innocence." <u>McQuiggin</u>, 133 S. Ct. at 1931 (citing <u>Herrera v. Collins</u>, 506 U.S. 390, 404-05 (1993)). Regardless of whether Petitioner attempts to present actual innocence as a freestanding claim, or whether he attempts to assert actual innocence as a gateway to allow review of a procedurally defaulted claim, such attempts fail.

A petitioner claiming actual innocence "must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" <u>House v. Bell</u>, 547 U.S. 518, 536-37 (2006) (quoting <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995)). This "standard is demanding and permits review only in the

---

[6]Petitioner complains repeatedly that the video is exculpatory because the victims said they left the club between 6:00 AM and 6:30 AM, and the video showed Petitioner left the club around 7:00 AM. One victim's statement, however, indicated the victims left work somewhere between 6:30 AM and 6:45 AM. (<u>See</u> Dkt. No. 23-8 at 46 of 49.) At the PCR hearing, plea counsel testified that she saw the tape, and "Mr. Samuel clearly appeared in it, leaving with I guess his co-defendant, Diamond, after those two girls had left." (R. at 117.)

'extraordinary' case." Id. at 538 (quoting Schlup, 513 U.S. at 327 (internal quotations and citations omitted)). Also, a petitioner would have to show "factual innocence, not mere legal insufficiency." Bousley v. United States, 523 U.S. 614, 623 (1998).

    As set forth herein, however, this "new" evidence to which Petitioner refers was referenced at his guilty plea. In addition, this evidence–allegedly showing Petitioner leaving the club at approximately 7:00 AM–does not establish that "it is more likely than not that no reasonable juror would have found [P]etitioner guilty beyond a reasonable doubt." House, 547 U.S. at 536-37. Petitioner focuses on the report that the victims left the club between 6:00 AM and 6:30 AM, but one victim's statement indicated they left between 6:30 AM and 6:45 AM. (See Dkt. No. 23-8 at 46 of 49.) In addition, at least one of the victims positively identified Petitioner as the perpetrator. (See R. at 33.) Once officers believed they knew the identity of the perpetrators, officers went to their place of employment, where they saw a vehicle that matched the description given by the victims; the vehicle was identified as belonging to Petitioner. (See R. at 32-34, 127-28.) Finally, Petitioner made a statement to police implicating himself in the armed robbery. (See R. at 35, 127-28.) In light of the foregoing, Petitioner has not "demonstrate[d] that, 'in light of all the evidence,' 'it is more likely than not that no reasonable juror would have convicted him.'" Bousley, 523 U.S. at 623 (quoting Schlup, 513 U.S. at 327-28); see also Woodward v. Cline, 693 F.3d 1289, 1294 (10th Cir. 2012) ("Although Applicant refers to alleged weaknesses in the evidence against him and points to affidavits by his sons that assert an alibi, it requires only a brief review of the preliminary-hearing evidence, including his confession, to see that he has failed to meet the demanding standard for establishing actual innocence."); Graham v. Angelone, 191 F.3d 447, at *10 (4th Cir. 1999) (unpublished table decision) ("Weighing the wealth of incriminating evidence against two ambiguous notes allegedly drafted by a convicted murderer, we are not at all persuaded that it was more likely than not that *no*

reasonable juror would have convicted Graham in view of the new evidence. Accordingly, we reject Graham's actual innocence claim and, therefore, may not review his defaulted claims."). The undersigned recommends granting summary judgment to Respondent.

## CONCLUSION

It is therefore RECOMMENDED, for the foregoing reasons, that Petitioner's Motion for Preliminary Injunction (Dkt. No. 29) be DENIED as moot.

It is further RECOMMENDED that Respondent's Motion for Summary Judgment (Dkt. No. 24) be GRANTED; and the Petitioner's habeas petition be DISMISSED WITH PREJUDICE. It is also RECOMMENDED that a certificate of appealability be denied.[7]

IT IS SO RECOMMENDED.

December 19, 2014
Charleston, South Carolina

_____
WALLACE W. DIXON
UNITED STATES MAGISTRATE JUDGE

**The parties' attention is directed to the important notice on the next page.**

---

[7] A certificate of appealability "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A prisoner satisfies this standard by demonstrating that reasonable jurists would find the district court's assessment of his constitutional claims is debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable. See Miller-El v. Cockrell, 537 U.S. 322, 327 (2003); Slack v. McDaniel, 529 U.S. 473, 484 (2000); Rose v. Lee, 252 F.3d 676, 683-85 (4th Cir. 2001). In this case, the undersigned recommends concluding that the standard for the issuance of a certificate of appealability has not been met.

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).